UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE RAKOFF

AARON MIGDOL,

Plaintiff,

-against-

Case No.:
COMPLAINT

123 WASHINGTON LLC., and
DEWEY & LEBOEUF, LLP
as Escrow Agent,

July Trial Demanded

Defendants

RECEIVED
APR 11 2011
U.S.D.C. S.D. N.Y.
CASHIERS

The Plaintiff, Aaron Migdol, brings this action through his attorneys,

LAZAROWITZ & MANGANILLO LLP, against the Defendants, 123 WASHINGTON LLC, and

DEWEY & LEBOUEF, LLP, Escrow Agent, and alleges as follows:

### PRELIMINARY STATEMENT:

1.      This is an action by contract vendee of a newly constructed residential

condominium apartment (Unit 46G) at the 123 Washington Street Condominium (the

"Condominium") in New York City for damages pursuant to *inter alia*, the Federal

Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.* ("ILSA").

2.      Despite the Condominium being fully subject to ILSA, and not qualifying

under any exemption thereto, its sponsor, Defendant 123 Washington LLC (the

"Sponsor"), entered into purchase agreements before the Condominium was registered

with the U.S. Department of Housing and Urban Development ("HUD"), thus

violating ILSA's registration requirement.

3.      Similarly, the Sponsor failed to provide the Plaintiff, or anyone acting for

them, with a property report prior to the execution of the purchase agreement for Unit 46G

in the Condominium, as also required by ILSA.

4.     The Plaintiff also timely and validly revoked his purchase agreement pursuant to U.S.O. §§ 1503(d) and U.S.C. §§ 1702(a)(2) which provisions grant the Contract vendees the opportunity to revoke purchase agreements that do not contain contract clauses specified therein, and when the building to be erected is not completed within two years after the execution of the Contract to Purchase.

5.     The Sponsor has violated the terms of the Offering Plan filed with the Secretary of State of the State of New York, by failing to complete the building by June 1, 2009, for failing to conduct a first closing by a bona fide purchaser within 12 months of July 1, 2009, for failing to amend the Plan and disclose to Purchasers that the Sponsor is in financial distress, including failing to timely pay his mortgage payments and for the cost for the construction and work performed in the subject building, for failing to Amend the Plan and disclose to Purchasers that a large number of lawsuits have been filed against the Sponsor. Moreover, the Sponsor has also wrongfully declared the Plan effective claiming twenty-three (23%) percent of the Units offered for sale were under Contract to bonafide purchasers, when in fact some of the proposed purchasers were business associates and should not have been included for purposes of declaring the Plan effective.

6.     Under 15 U.S.C. § 1703(a), the Plaintiff is entitled to equitable revocation, damages, interest, costs and attorney's fees for the defendant Sponsor's failure to register the Condominium with HUD, failure to provide a property report to Plaintiff, failure to advise Plaintiff of his ILSA revocation rights in the offering materials supplied to them and for violating the terms of the Offering Plan submitted to the Secretary of State the State of New York.

7.      Plaintiff asserts state law tort claims for equitable revocation for violating the Purchase Agreement and Offering Plan, for defendant Sponsor's failure to conduct a First Closing by a Bona Fide Sponsor by June 30, 2010, for failure to provide rescission due to Sponsor's lack of financial viability, as required under the Offering Plan and Purchase Agreement and for failing to construct the aforesaid unit pursuant to the dimensions, specifications and quality agreed between the parties.

## PARTIES, JURISDICTION AND VENUE

8.      Aaron Migdol is an individual resident of the County of New York, State of New York and is a Contract Vendee for Unit 46G of the Condominium.

9.      Upon information and belief, 123 Washington LLC (the "Sponsor") is a Delaware Limited Liability Company with offices in care of the Moinian Group, 530 Fifth Avenue, New York, New York 10036 of the Condominium which is located at 123 Washington Street, New York, New York 10006.

10.     The Sponsor is responsible for the development of the Condominium and has sold, offered to sell, and/or advertised sale for the units in the Condominium.

11.     Sponsor is considered the "developer" of the Condominium under 15 U.S.C Section 1701(5).

12.     Upon information and belief, Dewey &LeBouef, LLP (the "Escrow Agent") is the successor in interest to LeBouef, Lamb, Greene & Macrae LLP, a law firm with offices at 1301 Avenue of the Americas, New York, New York 10019, which the Sponsor has retained to serve as Escrow Agent in connection with the purchase agreement entered into between a Sponsor and

Contract Vendees of the units of the Condominium.

13.     Jurisdiction is proper in this court as to the First and Second Claims under both 28 U.S.C. § 1331, the general federal question jurisdiction statute, and 15 U.S.C. § 1719, the provision of ILSA granting U.S. District Courts jurisdiction over actions to enforce ILSA's provisions.

14.     Jurisdiction is proper in this Court as to the Third Claim under diversity of citizenship, 28, U.S.C. § 1332; and supplemental jurisdiction, 28 U.SC. § 1367.

15.     Venue is proper in this District under both 28 U.S.C. § 1391, the general venue statue, and 15 U.S.C. § 1719, ILSA's venue provision, in that all defendants reside and may be found in this District, the offer and sales contract at issue was entered into in this District, and the condominium unit at issue is located in this District.

16.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

## BACKGROUND

17.     123 Washington Street Condominium is a newly constructed residential Condominium consisting of 222 Units and also contains a non residential section containing a 217 room hotel, a restaurant and bar unit, located at 123 Washington Street, New York, New York 10006.

18.     The Sponsor is marketing the Condominiums in the residential units for home occupation.

19.     In marketing the Condominium, the Sponsor used means or instruments of transportation or communication in interstate and international commerce, including the U.S. Postal Service, interstate courier services, the telephones, the Internet (including

the Sponsor's website) and other forms of electronic communications.

20.         There are 222 residential Condominium Units in the Condominium that were officially offered to the public by the Sponsor in an Offering Plan (the "Plan") that was accepted for filing by the Attorney General of the State of New York which was accepted for filing on July 17, 2007.

21.         That due to the Sponsor marketing the Condominium to Migdol, Migdol entered into a Purchase Agreement dated May 22, 2008 (The Purchase Agreement for Unit 46G of the Condominium) (The "Unit") for a purchase price of $1,530,000.00.

22.         This Purchase Agreement was signed by both the Vendee and the Sponsor on or about May 22, 2008.

23.         Pursuant to the terms of the Purchase Agreement the Vendee paid to Dewey & LeBouef, Lamb, Green & McCray, LLP whose was the named Escrow Agent, which upon information and belief became Dewey and LeBouef, LLP., a total deposit of $153,000.00.

24.         Pursuant to the terms of the Purchase Agreement the Vendee paid to Dewey & LeBouef, Lamb, Green & McCray, LLP whose was the named Escrow Agent, which upon information and belief became Dewey and LeBouef, LLP., a second deposit of $76,500.00.

25.         Upon information and belief, the Escrow Agent holds $229,500.00 in deposit payments made (the "deposit") plus accrued interest in escrow for the benefit of the parties pursuant to the terms of the Escrow Agreement contained in the Plan.

26.         At the time the Purchase Agreement was signed, the Unit had not been constructed and was not habitable.

27.         On information and belief, in connection with its marketing efforts, the Sponsor provided Plaintiff with the Plan prior to the execution of the contract to purchase Unit 46G at the

Condominium.

28.        The Sponsor did not, however, provide Plaintiff, or anyone else actually or purportedly acting on the Plaintiff's behalf, with any property *disclosure* in the form specified under ILSA.

29.        Commencing in March 2011, the Vendee through his attorney sent a revocation letter to the Sponsor and Escrow Agent which revoked the Purchase Agreement, explained the reasons why the Vendee was entitled to revoke, and demanded immediate payment of all money held on deposit under the Purchase Agreement.

30.        The Sponsor through their attorneys reported to reject the Vendee revocation and demand for a refund of the deposit.

31.        Neither the Sponsor nor the Escrow Agent has made any payment to the purchaser on the account of the revocation.

### The Plaintiff's Entitlement to Revoke Under ILSA

32.        Under 15 U.S.C. Section 1703 (d) if a Contract to purchase a lot of real estate (including a Condominium Unit) is not exempt under ILSA, does not contain specified clauses, the Purchaser has the option (in ILSA Revocation Option) to revoke the Contract..

33.        Under 15 U.S.C. Section 1703(d)(1) a Purchaser has an ILSA Revocation Option (1703(d)(1) Revocation Option) where the Contract does not provide "a description of the lot which makes such lot clearly identifiable, and which it is in a form adequate for recording by the appropriate public officials responsible for maintaining records".

34.        Under 15 U.S.C. Section 1703(d)(3) the Purchaser has an ILSA Revocation Option ("1703(d)(3) Revocation Option) where the Contract does not provide:

>    If a purchaser or lessee loses rights and interest in the lot as a result of default or breach
>    of a Contract or Agreement which occurs after the purchase or lease he has paid 15 percent
>    of the purchase price of the lot excluding any interest owed under the contract agreement, the

Seller or Lessor (or successor thereof) shall refund to such Purchaser or Lessee any amount which remains after subtracting (A) 15 percent of the Purchase Price of the lot, excluding any interest owed under the Contract or Agreement, or the amount damages incurred by the Seller or Lessee or (or successor thereof) as a result of such breach whichever is greater from (B) the amount paid by the Purchaser or Lessee with respect to the purchase price of the lot, excluding any interest paid under the Contract Agreement.

35.     As a regulation issued by HUD pursuant to ILSA, 24 CFR 1715.4(b) interpreting the 1703(d)(3) Revocation Option specifies that (to avoid such Revocation Option "no damages may be specified in the Contract Agreement except the liquidated damage cause not exceeding 15 percent of the purchase price of the lot, excluding any interest owed".

36.     The Condominium is a development that is subject to ILSA and does not qualify under any ILSA exemptions.

37.     As the Sponsor did not provide Plaintiff, or anyone actually or purportedly acting on Plaintiff's behalf, with a property report in the form required by ILSA before the purchase agreement was signed, Plaintiff had the right to revoke the Purchase Agreement within two years from the date of Purchase agreement, unless an ILSA exemption applies.

### No ILSA Exemptions Apply

38.     Under 15 U.S.C. § 1702 and the regulations issued thereunder, certain transactions are exempt from the application of all or parts of ILSA.

39.     However, none of these exemptions apply to the purchase transaction at issue herein.

i)     *The Two-Year Construction Exemption*

40.     The Purchase Agreement was signed prior to the time that the Unit was constructed or habitable.

41.     The Purchase Agreement did not require that construction of the Unit be completed within two years of its execution.

42.     As such, the Purchase Agreement is not exempt under 15 U.S.C. § 1702(a)(2).

ii)     *The Builder's Exemption*

43.     The Purchase Agreement contemplated that the Unit would be sold fully constructed and ready for residential use, and not as a lot upon which the vendees would construct buildings.

44.     As such, the Purchase Agreement is not exempt under 15 U.S.C. § 1702(a)(7).

iii)     *The Bona Fide Land Sales Exemption*

45.     The Plaintiff is an individual who is not in the bona fide land sales business.

46.     The Sponsor never requested any information from Plaintiff to demonstrate that he was in a bona fide land sales business.

47.     On information and belief, the Sponsor does not maintain any records to demonstrate that the Plaintiff is in a bona fide land sales business.

48.     As such, the Purchase Agreement is not exempt under 24 CFR § 1710.14(a)(3).

iv) *The 100 Unit Exemption*

49.     At the time Plaintiff signed the Purchase Agreement, the Sponsor offered 222 units for sale under the Offering Plan.

50.     On information and belief, on its Initial Registration Application submitted to HUD, dated October 11, 2007, and on all documents submitted to HUD thereafter, the Sponsor represented that there were 222 units for sale under the Offering Plan.

51.     As such, at all relevant times, the Condominium was not exempt under 15 U.S.C. § 1702(b)(1), which exempts developments containing fewer than 100 units not otherwise exempt, either individually or in conjunction with any other exemptions.

v) *No Other Exemptions Apply*

52.     Further, the Sponsor has no basis to claim any ILSA exemption other than those discussed in the foregoing paragraphs.

53.     Accordingly, the Condominium is a development that is subject to ILSA and does not qualify under any of ILSA's exemptions.

54.     Likewise, the Purchase Agreement at issue herein is for a lot of real estate that is not exempt under ILSA.

## Property Not Described in Recordable Form

55.     As discussed above, the Purchase Agreement at issue herein is for a lot of real estate that is not exempt under ILSA.

56.     Under 15 U.S.C. § I 703(d)(1), a purchaser may revoke within two years where the contract does not provide: "a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records" (unless a deed is issued within 180 days of contract signing).

57.     No deed for the Unit was issued within 180 days of contract signing, or indeed ever issued.

58.     The Purchase Agreement at issue herein may be revoked within two years because it does not contain "a description of the lot ... which is in a form acceptable for recording."

59.     Under New York Real Property Law ("RPL") § 294, a purchase agreement may only be recorded if it is "acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded."

60.     The Purchase Agreement here was not "acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded."

61.     The New York Condominium Act, article 9-B of the RPL, sets forth, *inter alia*, the requirements for the legal description of a condominium unit lot to be acceptable for recording.

62.     New York Real Property Law ("RPL") § 339-o provides, in relevant part:

> Deeds and leases of units shall include the following particulars:
> 1.   Description of the land as provided in subsection two of section three hundred thirty-nine and the liber, page and date of recording of the declaration or solely by naming the city, village or town and the county in which the unit is located and referring to the liber, page and date of recording of the declaration.
> 2.   The unit designation of the unit in the declaration and any other data necessary for its proper identification.

63.     Thus, for a New York condominium unit, "a description of the lot ... which is in a form acceptable for recording" must contain, in addition to other requirements, "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration," which is information unavailable prior to the recording of the condominium's declaration.

64.     The Purchase Agreement at issue qualifies for the 1703(d)(I) Revocation Option because it does not contain a description of the lot which is in the form acceptable for recording.

65.     Likewise, "[t]he unit designation of the unit in the declaration" is unavailable until the declaration is recorded.

66.     Here, the Purchase Agreement did not contain "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" of the Condominium.

67.     Similarly, no other document provided to the Plaintiff at or prior to the time the Purchase Agreement was entered into contained "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" the Condominium.

68.     The Condominium Declaration (the "Actual Declaration") was recorded in the Office of the New York City Register on June 22, 2010 and assigned City Register File No ("CRFN") [the designation used by the City Register in lieu of liber and page] 22010000207364.

69.     As such, "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" of the Condominium was not provided to the Plaintiff at the time the Purchase Agreement was entered into because the Actual Declaration was not recorded until June 22, 2010, and its CRFN was not assigned until that date.

70.     Accordingly, the Purchase Agreement did not contain "a description of the lot which is in a form acceptable for recording."

71.     That the Sponsor committed deceit, fraud and misrepresentation in their written description of size, dimensions, square footage and lay-out by constructing Unit 46G significantly smaller and with conversely different dimensions than the floor plan and layout represented in the Purchase Agreement.

72.     The only description set forth in the Purchase Agreement for the Unit to be purchased by the vendee, is Unit 46G of 123 Washington Condominium and an address at 123 Washington Street, New York, New York 10006.

73.     There is no further attempt throughout the Purchase Agreement to identify the Unit in proper form for filing of the Contract of Sale, which is in a form acceptable for recording.

74.     Instead, the Purchase Agreement, Paragraph 7.1, provided that the Sponsor shall deliver "a Bargain and Sale Deed with Covenants Against Grantor's Acts conveying the Unit to the Purchaser which Deed shall be substantially in the form set forth in Part Two

of the Plan."

75.        The proposed Unit Deed as set forth in the Plan is devoid of any information required for filing, such as Section, Lot, Block of the Unit and the property tax map, designation and certifications.

76.        Therefore, Plaintiff had the right to revoke the Purchase Agreement within two years pursuant to 15 U.S.C. § 1703(d).

## Failure To Disclose Revocation Option

77.        Under HUD regulations issued pursuant to ILSA, including 24 CFR§§ 1710.105(c) (d) & 1710.209(f)(3), the Sponsor was required to disclose to the Plaintiff in the property disclosure report or on the face or signature page of the Purchase Agreement that the Purchaser had the option to revoke the Purchase Agreement within two years.

78.        The Sponsor failed to disclose to the Plaintiff that he had a two year revocation option, either as required under the HUD regulations or in any other manner.

79.        The Plaintiff did not learn of their revocation option until after the two year period of the revocation option had expired.

80.        Had the Sponsor disclosed the Plaintiff's revocation option to him within the two year revocation period, the Plaintiff would have timely exercised his revocation option. If the Plaintiff had timely exercised his revocation option, under 15 U.S.C. § 1703(e), the Plaintiff would have been "entitled to all money paid by him or her under such contract or agreement."

## Failure to Register and Anti-Fraud

81.        As discussed above, 15 U.S.C. § 1703(a)(1)(B) requires a developer and its agents selling a non-exempt condominium unit to provide buyers a printed property report meeting ILSA's requirements prior to their signing a purchase agreement.

82.    Similarly, under 15 U.S.C. § 1703(a)(1)(A), a developer and its agents are prohibited from selling a non-exempt condominium unit if a "statement of record" is not filed with HUD and in effect at the time of sale.

83.    Likewise, under 15 U.S.C, § 1703(a)(1)(D), a developer and its agents are prohibited from selling a non-exempt condominium unit using "advertising and promotional material which is inconsistent with information required to be disclosed in the property report."

84.    Furthermore, under 15 U.S.C. § 1703(a)(2), a developer and its agents are prohibited from selling a non-exempt condominium unit (A) by employing any device, scheme, or artifice to defraud; (B) by means of any untrue statement of a material fact, or any omission of a material fact which makes the statements made misleading; and (C) through any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

85.    The Sponsor, as developer of the Condominium, failed to provide the Plaintiff a property report in the form required prior to when Plaintiff signed the Purchase Agreement.

86.    The Sponsor, as developer of the Condominium, did not properly register the Condominium with HUD when Plaintiff signed the Purchase Agreement.

87.    In particular, on October 11, 2007, the Sponsor submitted its Initial Registration Application to HUD.

88.    On November 7, 2007, HUD sent a Suspension Notice to the Sponsor, advising the Sponsor that its initial submission was materially deficient and that it was suspended from selling lots until the deficiencies were remedied.

89.     The Sponsor, as developer of the Condominium, provided the Plaintiff with information inconsistent with that required to be disclosed in the property report.

90.     In particular, among other deviations from ILSA requirements, the materials Sponsor provided to the Plaintiff, including the Plan, did not disclose that the Plaintiff was entitled to revoke the Purchase Agreement within two years if he was not provided with a property report prior to the execution of the Purchase Agreement.

91.     The foregoing constitutes fraud, deceptive sales practices, untrue statements of material facts and omissions causing statements to be misleading.

92.     Accordingly, the Sponsor has violated 15 U.S.C. §§1703 (a)(1)(A), (a)(1)(B), (a)(1)(C), & (a)(2).

93.     Under 15 U.S.C. § 1709(a) & (b), the Plaintiff may bring an action to enforce his rights under ILSA, including revocation, equitable revocation, return of their Deposit, and other relief.

94.     Under 15 U.S.C. § 1709(c), in addition to such relief, the Plaintiff, as Vendee, is entitled to "interest, court costs, and reasonable amounts for attorneys' fees."

### Failure To Comply With Other Terms

95.     Under Section 1702(a)(2) the Contract vendee has the opportunity to revoke the Purchase Agreement that does not contain a clause specifying therein when the building will be erected and that it must be completed within two years of the execution of the Contract to Purchase..

96.     The Certificates of Occupancy for the purchase of the Unit herein were not issued until October 27, 2010 when in fact the Contract to Purchase was made on November 22, 2011 almost one year past the limitations set forth under 1702(a)(2).

97.     The Sponsor is well aware that the sale of a residential units are subject to ILSA as the Sponsor has not attempted to avail itself of the exceptions available under 15 U.S.C. Section 1702.

98.     Under the New York State Condominium Act, for the Offering Plan to become effective, a minimum of fifteen (15) percent of all Units being offered for sale must have Purchase Agreements signed by bonafide purchasers for value.

99.   In the instant matter, there were contracts for Units to be purchased by business associates of the Sponsor, who were not bonafide Purchasers for value.

100.    Therefore, the Sponsor failed to have the necessary fifteen (15) percent of units under Contract before seeking to have a Plan declared effective.

101.    That as a result thereof, the Plan is not an effective or legitimate Plan.

102.    Furthermore, under the provisions of the Plan, the first Unit must close within 12 months of July 1, 2009, as the date set forth in Schedule "B" as the commencement date for the first year of operation, and should the Sponsor fail to conduct a first closing of a  bonafide purchaser by June 30, 2010, the Sponsor would be required to offer all purchasers the right of rescission and the return of all down-payment monies.

103.    That the Temporary Certificate of Occupancy for the premises did not become effective until October 27, 2010.

104.    Therefore, there could be no bonafide purchaser of Units permissible for occupancy within one year of July 1, 2009, rendering any such completed sales ineffective as to the provisions of the Plan requiring the Sponsor to offer the vendees (purchaser) the right to rescind their Agreement.

105.    Any alleged closing of title before June 30, 2010, had to be by a non-bonafide

purchaser or by a purchaser who was provided a fraudulent inducement to close title, so that Sponsor did not have to offer rescission to the plaintiff and other like purchasers.

## FIRST CLAIM FOR RELIEF: EQUITABLE REVOCATION

106.     Plaintiff repeats, realleges all of the foregoing Paragraphs of this Complaint as more fully set forth herein.

107.     The vendee is a contract vendee under a Purchase Agreement for the purchase of a lot of real property not exempt from ILSA.

108.     Under ILSA, Plaintiff had the right to revoke the Purchase Agreement within two years of the date of its signing.

109.     The Sponsor failed to give notice to Plaintiff of his right to revoke the Purchase Agreement within two years.

110.     Plaintiff did not learn of his revocation option until after the two year period of the revocation option expired.

111.     Had the Sponsor informed Plaintiff of his right to revoke the Purchase Agreement during the two year period, Plaintiff would have exercised such right.

112.     As a result, Plaintiff is equitably entitled to revoke his Purchase Agreement.

113.     Plaintiff has incurred damages in the amount of $229,500.00 as a result of the Sponsor's failure to give Plaintiff notice of his revocation option.

114.     The Plaintiff is entitled to a Judgment awarding equitable revocation and directing the Sponsor and the Escrow Agent to refund the Deposit, and awarding interest, costs and reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF: 15 U.S.C. § 1703(a) VIOLATIONS

115.     Plaintiff repeats and realleges all of the foregoing paragraphs as though fully set

forth herein.

116.      The Sponsor has violated 15 U.S.C. § 1703(a) by, among other things, failing

to provide the Plaintiff with a property report, entering into the Purchase Agreement

with Plaintiff before HUD sent the Sponsor notice that its registration had been accepted,

and in effect, providing information inconsistent with that required in the property

report and using false, deceptive, misleading and improper sales practices.

117.      The Sponsor's violations of 15 U.S.C. § 1703(a) were accomplished through

the use of the means and instrumentalities of interstate commerce.

118.      As such, the Plaintiff is entitled to damages and/or such other relief as the Court

deems fair, just, and equitable, plus interest, costs and reasonable attorney's fees against the

Sponsor.

### THIRD CLAIM FOR RELIEF: UNJUST ENRICHMENT

119.      Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint

as though fully set forth herein.

120.      The Sponsor and the Escrow Agent currently hold funds of the Plaintiff in the

amount of $229,500.00, plus accrued interest.

121.      Such funds are held under no valid contract, agreement or other legal

authority.

122.      The Sponsor and the Escrow Agent are not entitled to hold any such funds of

Plaintiff.

123.      The Sponsor and the Escrow Agent have failed to return such funds.

124.      The Sponsor and the Escrow Agent have been unjustly enriched by reason of their

retention of such funds.

125.      As such, the Plaintiff is entitled to a judgment against the Sponsor and the

Escrow Agent for $229,500.00, plus all accrued interest on the ground of unjust enrichment.

## PENDANT STATE CLAIMS

126.     Plaintiff repeats, reiterates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

127.     Plaintiff has satisfied all statutory conditions precedent to commencing the within action.

128.     This action is commenced, including all applicable tolls, within the applicable statute of limitations for the within claims.

129.     This action falls within one or more of the exceptions set forth in New York Civil Practice Law and Rules §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: CONTRACT REVOCATION FOR FAILING TO HAVE FIRST BONA FIDE CLOSING BY JUNE 30, 2010

130.     Plaintiff repeats and realleges all of the foregoing Paragraphs of this Complaint as though fully set forth herein.

131.     That under the Offering Plan incorporated by reference into the Purchase Agreement, the Sponsor was required to conduct the First Closing of a bona fide purchaser by June 30, 2010 or was required to offer the Plaintiff a right of rescission under the Purchase Agreement.

132.     That the Sponsor failed to conduct a closing of a bona fide purchaser by June 30, 2010.

133.     That the Sponsor failed to offer the Plaintiff a right of rescission, as is required under

the Offering Plan.

134.    That had the Sponsor offered the right of rescission, the plaintiff would have exercised said right to rescind and would have been entitled to the return of his down-payment monies.

135.    That the Sponsor has failed to return such funds.

136.    As such, the Plaintiff is entitled to a judgment against the Sponsor and the Escrow Agent for $229,500.00, plus all accrued interest, on the ground of breach of contract for failing to timely conduct the First Closing.

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: CONTRACT REVOCATION FOR SPONSOR BEING FINANCIALLY DISTRESSED

137.    Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as though more fully set forth herein.

138.    That under the Part 20 of Title 13 NYCRR and the Offering Plan incorporated by reference into the Purchase Agreement, the Sponsor was required to amend the Offering Plan and offer a right of rescission to the plaintiff if the Sponsor became financially distressed and/or unviable.

139.    That the Sponsor became financially distressed and has failed to fulfill his financial obligations with respect to the subject Property, including but not limited to his mortgage payments, payments to contractors, payments to sub-contractors, real estate brokers, attorneys

140.    That the Sponsor failed to Amend the Offering Plan and offer the Plaintiff a right of rescission.

141.    That the Sponsor has failed to return such funds.

142.    As such, the Plaintiff is entitled to a judgment against the Sponsor and the

Escrow Agent for $229,500.00, plus all accrued interest, on the grounds of rescission for financial distress.

### THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: CONTRACT REVOCATION DUE TO SPONSOR FAILING TO COMPLY WITH THE TERMS OF THE PURCHASE AGREEMENT

143.　　Plaintiff repeats and realleges all of the foregoing paragraphs of this Complaint as though more fully set forth herein.

144.　　That the Sponsor was required under the purchase agreement to construct Unit 46G pursuant to the same dimensions as the floor plan attached to the Purchase Agreement.

145.　　That the Sponsor breached the aforesaid terms of the Purchase Agreement.

146.　　That the Sponsor materially failed to construct Unit 46G pursuant to the same dimensions and square footage as the floor plan attached to the Purchase Agreement.

147.　　That the Sponsor constructed Unit 46G in non-compliance with the floor plan, dimensions and square footage indicated in the Purchase Agreement, as the Unit is substantially smaller and with a different layout than what was indicated in the floor plan attached to the Purchase Agreement.

148.　　That the Sponsor was also required under the Purchase Agreement, Offering Plan and common law to provide the Plaintiff with an apartment that was in habitable condition.

149.　　That the Sponsor breached the aforesaid terms of the Purchase Agreement.

150.　　That at the time of closing, the subject unit was uninhabitable.

151.　　That the subject unit lacks inter alia, gas, heat, lighting, flooring.

152.　　That as such, the Sponsor breached the aforesaid terms of the Purchase Agreement.

153.　　That the Sponsor was also required under the Purchase Agreement and Offering Plan

to provide the Plaintiff with premises that was approved for occupancy by the New York City Department of Buildings.

154.        That the Sponsor breached the aforesaid terms of the Purchase Agreement.

155.        That at the time of scheduled closing, the aforesaid premises lacked a proper certificate of occupancy for the aforesaid premises.

156.        That because the Sponsor breached the terms of the Purchase Agreement, the Sponsor is required to offer the Plaintiff the right of rescission.

157.        As such, the Plaintiff is entitled to a judgment against the Sponsor and the Escrow Agent for $229,500.00, plus all accrued interest, on the ground of breach of contract.


**WHEREFORE,** Plaintiff Aaron Migdol respectfully requests that this Court grant Judgment against Defendants 123 WASHINGTON LLC and DEWEY & LeBOEUF, LLP, as ESCROW AGENT:

a.   Awarding money damages against the Sponsor in the amount of $229,500.00, plus all accrued interest, under 15 U.S.C. § 1709(a) and (c) for violations of 15 U.S.C. §1703(a);

b.   Awarding money damages against the Sponsor in the amount of $229,500.00, plus all accrued interest, for breach of contract and failure to revoke contract under state claims;

c.   Directing the Escrow Agent to remit to Plaintiff all money held on Deposit under the Purchase Agreement;

c.   Awarding money damages against the Sponsor and the Escrow Agent in the amount of $229,500.00, plus all accrued interest, on the grounds of unjust enrichment.

d.   Awarding interest, costs and reasonable attorney's fees against all Defendants; and

e.   Granting such other and further relief as may be just and proper.

Dated: March 15, 2011
Brooklyn, New York

Lazarowitz & Manganillo LLP
Attorneys for Plaintiff

Marc J. Held Esq.
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

## ATTORNEY VERIFICATION

MARC J. HELD, an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am a member of the law firm of LAZAROWITZ & MANGANILLO, L.L.P., attorneys for the plaintiff, **AARON MIGDOL**, in the within action; I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true.  The reason this Verification is made by me and not by the plaintiff is that said plaintiff presently resides outside of the County in which the Affirmant's office is located.

The grounds of my belief as to all matters stated upon my own knowledge are as follows: the records, reports, contracts, and documents contained in the plaintiff's file.

MARC J. HELD, ESQ.

Affirmed to this 15th
day of March, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AARON MIGDOL,

                              Plaintiff,

                                                              **SUMMONS**

            -against-

123 WASHINGTON LLC, and
DEWEY & LEBOEUF, LLP
as Escrow Agent,

                              Defendants.
------------------------------------------------------------- X

========================================================================

# SUMMONS AND VERIFIED COMPLAINT

========================================================================

**LAZAROWITZ & MANGANILLO, LLP**
Attorneys for Petitioner
Office & Post Office Address
**2004 Ralph Avenue**
**Brooklyn, New York  11234**
**(718)-531-9700**

========================================================================

~~Signature (Rule 130-1.1-a)~~

~~Service of a copy of the within is hereby~~
admitted.
**Dated:**

**PLEASE TAKE NOTICE:**

_____   NOTICE OF ENTRY
        that the within is a true copy of an Order                    duly entered in
        the office of the clerk of the within named court on the
_____   NOTICE OF SETTLEMENT
        that a                      of which the within is a true copy will be presented for
        settlement to the Hon.                      , the Judge of the within named Court at
        on                    at 9:30 a.m.

DATED:  April 7, 2011

                                        Yours, etc.
                                        **LAZAROWITZ & MANGANILLO, LLP**